Schick v. Ott.

## ACTIONS—PLEADING—PRINCIPAL AND SURETY.

[Huron (6th) Circuit Court, October Term, 1905.]

Haynes, Parker and Wildman, JJ.

WILLIAM SCHICK v. ED. J. OTT ET AL.

1. FAILURE TO SET OUT INDORSEMENTS IN ACTION ON NOTE CORRECTED ON MOTION.

In an action on a promissory note, the failure to set out the indorsements thereon in the pleadings, or to state that there are no indorsements, is a defect to be reached by motion and not by demurrer.

2. AGREEMENT TO BE RESPONSIBLE FOR DEBTS CONTRACTED IN CERTAIN BUSINESS CREATES RELATION OF PRINCIPAL AND SURETY; AND ACTION OF SURETY TO ENFORCE PAYMENT BY PRINCIPAL MAINTAINABLE.

A petition alleging that plaintiff was engaged for a specified salary to conduct a certain business for defendants, they to become responsible for liabilities incurred by him in the management thereof, shows a state of facts creating the relation of principal and surety, upon which an action may be maintained by plaintiff to compel the defendants to pay such debts after they become due.

3. PETITION IN ACTION ALLEGING BREACH OF AGREEMENT TO PAY CERTAIN DEBTS DEMURRABLE IF NO ALLEGATION THAT SUCH DEBTS ARE DUE.

A petition in an action to compel a principal to pay debts to save his surety is open to demurrer for a failure to allege that such debts have matured.

4. JOINDER OF CAUSE OF ACTION ON NOTE WITH ONE TO ENFORCE PAYMENT OF DEBT BY PRINCIPAL IMPROPER.

The joinder of a cause of action on a promissory note, with one to compel the payment of a debt by a principal to save his surety, is improper and open to demurrer; a fortiori, when the principal's creditors, who are strangers to the note and in no way connected therewith, are joined as parties defendant to such action.

ERROR to Huron common pleas court.

**McKnight & Thomas,** for plaintiff in error.

**E. G. Martin** and **J. M. Bechtol,** for defendants in error.

**WILDMAN, J.**

This is a somewhat peculiar case and to give it any kind of elaborate consideration would perhaps require a reading of the entire petition and several demurrers thereto.

The case was disposed of in the court below upon the demurrers of several defendants to the petition of the plaintiff. The court sustained the demurrers and dismissed the plaintiff's petition, and Schick, who was the plaintiff below, comes to this court by a proceeding in error asking for a reversal of the judgment of the court of common pleas.

It is substantially claimed in the petition that Schick was engaged by the defendants, Edward J. Ott and Theresa Ott, to conduct a saloon

in Norwalk, they to become responsible for such liabilities as he should incur in the purchase of stock and in the hiring of help; they were also to pay him the sum of twelve dollars a week, two dollars a day for the working days of the week.

The defendants demurred, in one form and another, but generally alleged misjoinder of the several causes of action in the petition, the most of them, perhaps all, claiming also that the petition failed to state facts constituting a cause of action, against the parties demurring. There are three alleged causes of action set out in the petition, and upon the theory that all of the creditors of William Schick who had furnished him goods or loaned him money during the time that he was engaged in this business under his arrangement with the Otts, that they were all interested in the adjudication between him and the Otts as to their liability of the latter to pay the indebtedness so incurred by him, they are all brought into the suit as parties defendant; he sues not only Edward J. Ott and Theresa Ott, but he also sues a large number of persons who, it is said, furnished supplies to the saloon and became creditors therefor; also the bank which, at one time, loaned money to Schick.

It is not claimed in the petition that these various creditors were apprised of the arrangement between the Otts and Schick; that they had any knowledge whatever that the Otts were to become the backers of Schick, or were in any wise to become responsible for debts incurred by him.

The judge below, as we understand from a typewritten transcript of the opinion delivered by him, concluded that no right of action would arise in favor of Schick as against the Otts until he had been compelled to pay some of these debts; and he also took the view apparently that there was a misjoinder of the causes of action as alleged in the demurrers.

In his opinion, and in the journal entry, it is not stated that the demurrers are sustained by reason of a misjoinder of the causes of action, or upon the other ground, that the petition fails to state facts; but the dismissal of the petition by the court would leave the impression that the court was sustaining the demurrers upon the general ground,—perhaps upon both,—but at least upon the general ground, that it failed to state facts.

The first cause of action in the petition is the one in which the debts to the various creditors who had furnished supplies to the saloon, are described. The second cause of action is the one in which the debt to the bank is mentioned. The third cause of action is of an entirely dissimilar and distinct character. It is an ordinary suit upon a promissory note made by Edward J. Ott and Theresa Ott to Schick.

Schick v. Ott.

For convenience, I will consider the third cause of action first: It has been argued to the court by counsel for the Otts that the claim upon this cause of action is defective, in that it fails to set out the indorsements upon the note, or to state that there are no indorsements. The third cause of action is drawn substantially in the short form provided by the code,—a form which provides that it shall be sufficient to set out copies thereof with all credits and indorsements thereon. This petition fails to state that the note bears no indorsements and it fails to set out any indorsement.

We have examined the question thus arising with some care and have concluded, upon the basis of a number of authorities in Ohio, that a demurrer will not lie for this defect. Almost the precise question is raised in the case of *Kline* v. *Wehrmann*, 11 Dec. 509 (8 N. P. 336). Other cases more or less in point, are the cases of *Ingersoll* v. *Craw*, 4 Dec. Re. 76 (1 Clev. L. Rep. 1), a case decided by the Cuyahoga court of common pleas; also the case of *Ives* v. *Strickland*, 6 Dec. Re. 810 (8 Rec. 309), and of which cases I will make mention for brevity without reading. There is a case which may have some bearing incidentally in one of the Supreme Court decisions,—the case of *Schrock* v. *Cleveland*, 29 Ohio St. 499. The case, however, is one in which the short form was not exactly adopted; there was a little more than that but there is some comment by the judge that may throw some light upon the question presented here and it is cited for such use as may be made of it by counsel, if there is any wish to go higher with the question. There is also a case decided by the Cuyahoga common pleas court, *Beck* v. *Ball*, 4 Dec. Re. 233 (1 Clev. L. Rep. 147), which may be cited for such bearing as it may have in the opposite direction, of sustaining the claim of defendants in error.

The drift of the authorities seems to be, that while this is a defect under the short form, it is a defect that is to be reached by motion to make the petition definite rather than by demurrer; and indeed in one or more of the cases, it seems to be indicated that it is not necessarily a requirement of the statute that the petition shall state that there are no indorsements. The statute says it shall be sufficient to set out a copy of the petition with all credits and indorsements thereon. It does not, however, appear by this pleading that it had any indorsement to be set out. There is nothing in the statute which requires, in terms, that if there are no indorsements, that that fact shall be stated; so that it may be said, that the court will not assume that the note had indorsements upon it. Our judgment is, that this third cause of action does state facts sufficient to constitute a cause of action in favor of Schick against the

Huron County.

Otts. We are very clear, however, that it has no possible connection with the claims stated in the first and second causes of action, and we have no doubt then, that the court was right in the view that there was a misjoinder of causes of action.

I believe that not one of these demurrers, demurs to the causes of action separately, but the demurrers are all addressed to the petition as a whole, and in each demurrer where the question is raised as to the sufficiency of the statement of facts, the claim is made in the demurrers that the petition fails to state facts sufficient to constitute a cause of action; not that any one alleged cause of action fails to state the requisite facts, but that the petition, as a whole, fails to state them.

Of course, no one of the defendants other than the Otts would be bound in any way by claims upon the note against the Otts. It might be entirely proper for all the other defendants to demur upon the ground that the petition failed as a whole to constitute a cause of action against them, that is, against said other defendants.

There is another matter to which counsel did not especially invite the attention of the court, but which became apparent to us upon an examination of the petition, and that is, that in the assertion of the claims of the plaintiff in the so-called first and second causes of action in which Schick is insisting that the Otts should pay the debts therein described, there is an entire lack of any averment that the debts had accrued, that is, that they had matured,—had become due. It is plainly enough asserted that the debts are owed, but it is not asserted that the time had arrived for payment and without looking at the statute, and without looking at any adjudication, it should be plainly apparent to any mind that a person ought not to be compelled to pay a debt until the time has come for its payment. It was said in argument, however, that whatever may appear upon the face of the petition, there is no question but that the debts are due; it was so stated by the attorney for the plaintiff in error, and that it would be easy to show that the claims had matured so far as that question was concerned.

Another matter was suggested with regard to the first cause of action, by counsel for defendants in error, and that is, that the contract made, as alleged in that claimed cause of action, was a verbal one and that, under the statute of frauds, it would be invalid. We have not found it necessary for the time being, to discuss or consider that particular phase of the case. We have preferred to leave that question for future consideration, either of the court below, or this court, in case it should ever come to this court, and in view of what manifestly appears here, that counsel for Schick was led, by the position taken by

Schick v. Ott.

the court below in dismissing the action, or in holding rather, that no action at all would lie until the payment of the debt by Schick, into permitting the case to go to a dismissal and coming here without asking leave to amend.

The court below might have held, and we think properly, that the first and second causes of action were defective by reason of their failure to show that the debt had become due; but the court went a little further than that and held, as we read in the opinion, that the surety would have no right to sue the principal until the surety had paid the debt. The attention of the court below probably was not called either to the section of our statute as to another right of a surety, or as an equitable principle which indeed, obtained before the existence of the statute, and it is presumed it did not occur to the mind of the court at the time. Laning R. L. 9384 (R. S. 5845) provides that, "A surety may maintain an action against his principal, to compel him to discharge the debt or liability for which the surety is bound, after the same becomes due." This is an additional remedy to that which a surety has who is compelled to pay a debt which the principal ought to pay. If the principal fails to pay a debt which he should pay, the surety may pay and sue the principal at law, and by virtue of this statute, he may, even before payment, and without payment, sue the principal to compel payment after the debt has matured.

It has been held by our Supreme Court in several cases, that this right existed in equity even without this section of the statute.

Reference may be had to the case of *McConnell* v. *Scott*, 15 Ohio 401, 403 [45 Am. Dec. 583], and a note in the annotated edition citing Sheldon, Subrogation (2 ed.) 195, note 3, as to the right of a surety to compel the principal to pay a debt after it has become due.

Reference may be had also to *Stump* v. *Rogers*, 1 Ohio 533, in which it was held that a surety may proceed against the principal in equity, to have his estate subjected to the payment of a debt, without making payment himself, before commencing suit.

Now, the Otts are not said anywhere in this petition, in words, to have become, as between them and Schick, the principal debtors upon these several debts, but we think that that is the result of the allegations in the petition, in the first and second causes of action. It is alleged that Schick was to incur these obligations, or that he was to carry on this business; it is stated also that the creditors had no knowledge whatever of the relation which the Otts bore to it. I do not know that that is alleged in the petition, but it is conceded in argument before us. As between the Otts and Schick, we think the relation of

principal and surety arose, assuming these allegations in the petition to be true. That being so, if the debts had become due prior to the beginning of this suit, we think then that Schick might properly have brought suit against the Otts to compel them to pay the debts so incurred.

Some question has arisen as to who would be the proper parties in such an action.

In Horst v. Dague, 34 Ohio St. 371, or perhaps more properly in the dictum on page 375 in the opinion, is a suggestion that the creditors are necessary parties. It is not very apparent as to just what creditors are to do when they are brought in, unless perhaps do what I find one of the creditors did in this particular case,—one represented by Judge Mills of Sandusky,—who has filed a cross petition asking for judgment upon his claim, asking, for it, however, against Schick, without mentioning the Otts, if I remember aright. We simply notice that in looking over the files; however, it has no special bearing upon this case, but whatever may be the rights of the creditors, when brought into the case, they are not here sued in the sense that any relief is asked against them, that is, any judgment asked against them.

There is a prayer, or there is something in the prayer of the petition in the way of seeking to bar them against any future assertion of their claims, unless they assert them in this action, and the explanation of that in the argument is, that counsel desires to avoid a multiplicity of suits and so brings in all these several claimants.

Under all the circumstances, we do not, at this stage of the matter, feel it necessary to indicate what would or would not be the rights of the creditors when brought into the suit and we have concluded, in view of the manner in which this case has come to us, and the apparent misapprehension of just what were the rights of the parties in the mind of the judge below and the counsel for the plaintiff in error, to set aside the judgment rendered and remand the case for further proceedings. We think, as I have already stated, that the facts as stated in the first and second causes of action, do not constitute a cause of action against the creditors, or against the Otts, by reason of a failure to show that the debts have become due.

We think there is a good cause of action stated against the Otts in the third cause of action. We think there is a misjoinder of the causes of action and that by reason of the misjoinder of the causes, the demurrers should unquestionably be sustained and there should be a redocketing of the cases separately and that then the court below should take such proceedings as may be proper, and if the court sees

Schick v. Ott.

fit to permit the plaintiff in error to amend so as to show that the debts have become due, referring to the debts described in the first and second causes of action, that would be entirely within the province of the court below.

We have concluded that, under the circumstances, we would permit the cases to be docketed separately, so that each cause of action will stand upon its own foundation, unless perhaps the first and second may still stand together and the question then be fairly raised again upon demurrer, if the counsel sees fit, or otherwise.

The costs will be divided half and half between Schick and the Otts.

**Haynes** and **Parker, JJ.,** concur.